IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Andre Letrale Hill, # 185064,<br><br>                 Plaintiff,<br><br>vs.<br><br>Sgt. John Wiggins, Shirley A Singleton,<br><br>                 Defendants. | Civil Action No. 6:11-3406-CMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 38). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff is an inmate at Allendale Correctional Institution, part of the South Carolina Department of Corrections ("SCDC"). His allegations arise from his previous incarceration in the Administrative Segregation Unit ("ASU") at SCDC's Ridgeland Correctional Institution ("RCI"). The defendant John Wiggins is a Sergeant and Contraband Officer at RCI, and the defendant Shirley A. Singleton is a former Disciplinary Hearing Officer at RCI and now serves as the Associate Warden. In his complaint, the plaintiff alleges the defendants violated the Eighth and Fourteenth Amendments to the United States Constitution when he was made to endure unhealthy conditions in the ASU as a part of disciplinary detention sanctions for escape and smuggling, which were later

reversed through the SCDC grievance process.[1] He further alleges deliberate indifference to his serious medical needs that arose while in the ASU (doc. 45, pp. 2-3).

On June 4, 2012, the defendants filed a motion for summary judgment (doc. 38). By order dated June 5, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his affidavit in opposition to the defendants' motion (doc. 42) on June 18, 2012. The defendants filed a reply (doc. 44) on June 22, 2012, to which the plaintiff filed a response (doc. 45) on July 5, 2012.

## **FACTS PRESENTED**

On September 20, 2010, defendant Wiggins charged the plaintiff with escape and smuggling, accusing him of helping others in a scheme to retrieve contraband that had been thrown onto RCI grounds in a restricted area from outside the prison (comp. pp. 3-4). Defendant Singleton presided over the resulting disciplinary hearing the following month and found the plaintiff guilty, imposing a term of 512 days of disciplinary detention in the ASU and the loss of good time credits (*id.* p. 4). The plaintiff filed a grievance and was denied, but he appealed the denial all the way to the South Carolina Administrative Law Court, which reversed the decision and ordered the restoration of plaintiff's good time credits and other privileges (*id*. pp. 4-5). The plaintiff claims in the meantime, while in the ASU, his mattress and shower had mold, and that the water was rusty and unfiltered (*id.* p. 6). He offers no allegation of physical injury related to the mold, but contends that the water quality caused him to have infected gums, lose teeth, and develop a rash (doc. 42, pl. aff. pp. 2-3). While he blames the defendants for his placement in the ASU, he offers

---

[1]The plaintiff also was sanctioned with a loss of good time credits, but these were restored at the conclusion of his successful grievance appeal (doc. 38-2, Scarborough aff. ¶ 8).

no evidence that they had any knowledge of the alleged conditions of his confinement or his medical needs.

The defendants deny that the conditions experienced by the plaintiff in the ASU amounted to a constitutional concern, and they likewise deny that they violated the plaintiff's Eighth Amendment rights regarding his medical care. With their motion for summary judgment, the defendants have provided lab reports showing that the RCI water is safe to drink (doc. 38-4, Matthews aff. ¶¶ 7-8, ex. 1, lab reports) and records showing no complaints from the plaintiff to the medical staff about any illnesses resulting from the water or the mold he claims was present (doc. 38-3, Davis aff. ¶¶ 3-7; doc. 44-2, Davis aff. ¶¶ 3-8, ex. 1, medical records). The defendants also provide an affidavit and dental health records for the plaintiff during the period he was in the ASU (doc. 44-1, Bowens aff. ¶¶ 3-8, ex. 1, dental records).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

3

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Due Process***

As a preliminary matter, the plaintiff contends that the defendants Wiggins and Singleton violated his right to due process with their respective roles as charging officer and hearing officer at the disciplinary hearing, which resulted in his confinement in the ASU. He asserts that the defendants "relied upon unreliable sources" in the disciplinary hearing and implies that the reversal by the Administrative Law Judge ("ALJ") is proof that he was denied due process (comp. p. 6). However, the ALJ's order is not provided by the plaintiff, and he has presented nothing to show that the reversal was based on a due process violation. Moreover, the plaintiff's loss of good time credit was restored on December 8, 2011, when his disciplinary conviction was reversed. *Ragan v. Lynch*, 113 F.3d 875, 877 (8th Cir.1997) (holding that even assuming that procedural errors occurred

4

during the disciplinary hearing as alleged, the administrative reversal of the disciplinary case and restoration of all good-time credits cured any due process violation that had occurred at the initial hearing). Accordingly, he cannot show that he was deprived of a liberty interest in this regard.

The plaintiff further alleges that his placement in the ASU violated his due process rights. There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. See *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983). Thus, the placement and assignment of inmates to particular institutions or units by state or federal corrections departments are discretionary functions and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 (4th Cir. 1984).

It is well settled in this judicial district that no existing state or federal laws confer any protected liberty interests upon inmates from being classified or placed in administrative segregation within a particular prison or in a particular section of a prison. *See, e.g., Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (If a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

Furthermore, in *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court concluded that the plaintiff's

5

"segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485. The plaintiff's claims regarding his custody classification fails to rise to the level of a constitutional violation.

***Conditions of Confinement***

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment regarding the conditions of his confinement, a prisoner must prove that he was deprived of a basic human need and that prison officials were deliberately indifferent to that deprivation. *See Strickler v.* Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). The first prong of the *Strickler* analysis requires an objective showing that the deprivation was sufficiently serious, such that significant physical or emotional injury resulted from it, while the second prong is a subjective test requiring evidence that prison officials acted with a sufficiently culpable state of mind. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

The plaintiff has failed to meet either prong of the *Strickler* analysis. While he complains of mold and contaminated water, he brings forth no evidence that he suffered any ill effects from it. He provides nothing to contradict the affidavit and attached medical reports of Janine Davis, RCI's Health Care Authority, showing no record that he complained of discomfort or illness from ingesting mold or contaminated water during his placement in ASU (doc. 44-2, Davis aff. ¶¶ 3-8, ex. 1, medical records). While the plaintiff asserts in his reply that the RCI water caused his gums to be infected and his teeth to fall out, he presents nothing to back that allegation. In support of summary judgment, the defendants submitted an affidavit and lab tests showing the RCI water to be safe (doc. 38-4, Matthews aff.¶¶ 7-8, ex. 1, lab reports) and an affidavit and records from an RCI treating dentist, showing that the plaintiff's inflamed gums were diagnosed as irreversible pulpitis on September 2, 2010, which was prior to his placement in the ASU (doc. 44-1, Bowens aff. ¶ 4). Moreover, Dr. Bowens

6

testified in his affidavit that pulpitis is not caused by exposure to unclean drinking water (*id.* ¶ 6). Accordingly, the plaintiff has failed to make an objective showing that he suffered any serious, significant injury as a result of his alleged exposure to mold or contaminated water. Moreover, he has failed to show that either defendant had any knowledge whatsoever of the mold or water he complains of here, and thus he cannot meet the subjective prong of *Strickler* either.

### *Deliberate Indifference to Medical Needs*

The plaintiff also alleges deliberate indifference to his medical needs, in that his dental problems were not referred to a specialist, or otherwise treated as the plaintiff expected. Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a

7

lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

As addressed above, the plaintiff has presented nothing to show that these defendants had any knowledge of his dental problems, and, as such, his claim cannot survive summary judgment. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (finding that to establish a claim for denial of medical care against non-medical supervisory defendants, plaintiff must show defendants failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct) (citations omitted). In any event, this court has reviewed the affidavit of Dr. Bowen and the plaintiff's dental records from SCDC (doc. 44-1) and is convinced the plaintiff has indeed received adequate dental care, as evidenced by the multiple entries on his dental chart.

*Qualified Immunity*

The defendants further argue that they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights. Therefore, defendants Wiggins and Singletary are entitled to the protections afforded by the doctrine of qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 38) be granted.

s/Kevin F. McDonald
United States Magistrate Judge

September 17, 2012
Greenville, South Carolina

9

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.